UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANELA GHILARY HUAMAN VILLANUEVA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, Warden of the California City Detention Center, POLLY KAISER, Field Office Director of the San Francisco Immigration and Customs Enforcement Office, TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01218-KES-HBK (HC)<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Doc. 4 |

Upon her entry into the country in 2022, petitioner Yanela Ghilary Huaman Villanueva was detained by immigration officials pursuant to 8 U.S.C. § 1225(b)(2) and then released on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). She was re-detained on July 2, 2025. Following her re-detention, petitioner sought a bond hearing before an immigration judge, arguing that she was detained under § 1226(a). The immigration judge denied that motion, finding that petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2). On September 16, 2025, petitioner filed a motion for temporary restraining order which argues that the application of 8 U.S.C. § 1225(b)(2) to her violates the plain language of the Immigration and

1  Nationality Act ("INA"). *See* Doc. 4. Petitioner argues in her motion that the applicable

2  detention authority is 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2), and that she is

3  entitled to a § 1226(a) bond hearing. *See* Doc. 4 at 10–17.

4  Respondents filed an opposition on September 23, 2025, arguing primarily that petitioner

5  is detained under § 1225(b)(2).[1] Doc. 8. Petitioner filed a reply. Doc. 9. The Court requested

6  supplemental briefing on the issue of whether petitioner's parole had been issued pursuant to 8

7  C.F.R. § 212.5, and if so, whether the issuance of parole pursuant to that regulation affected the

8  statutory basis for her detention. Doc. 10. Petitioner filed a supplemental brief on October 3,

9  2025, and confirmed that her parole was pursuant to § 212.5. Doc. 11. Respondents chose not to

10 file a further reply.[2]

11 For the reasons explained below, petitioner's motion for temporary restraining order,

12 which is based on her argument that she is entitled to a bond hearing pursuant to 8 U.S.C.

13 § 1226(a), is denied.[3]

---

[1] Respondents argue that petitioner is an "applicant for admission" and for this reason is subject to 8 U.S.C. § 1225(b)(2)(A). Doc. 8 at 3. As a matter of statutory interpretation, that argument is incorrect. *See Guerrero Lepe v. Andrews*, 1:25-cv-01163-KES-SKO (E.D. Cal. Sept. 23, 2025). However, as explained below, § 1225(b)(2) is the applicable detention authority for a different reason.

[2] On October 16, 2025, petitioner filed a motion for extension of time regarding her supplemental brief, which was due on October 1, 2025, but was not filed until October 3, 2025. Doc. 12. The Court will exercise its discretion and consider the supplemental brief.

[3] The petition also asserts that petitioner's re-detention without a pre-deprivation bond hearing violated the Due Process Clause of the Fifth Amendment. Doc. 1 at ¶¶ 40–55. This Order does not address petitioner's likelihood of success on her due process claim because, while that claim was raised in the petition, petitioner did not argue the due process claim in her motion for temporary restraining order. *See* Doc. 4 at 10–18. Nor did respondents raise the due process claim in their opposition. *See* Doc. 8. While petitioner argued in her reply and supplemental filing that she is entitled to relief under the Due Process Clause, *see* Doc. 9 at 5–9; Doc. 11 at 4–5, litigants "may not raise new legal issues for the first time in [a] reply brief." *Pacira Pharms., Inc. v. Rsch. Dev. Found.*, No. 221CV02241CDSDJA, 2024 WL 1744623, at *1 (D. Nev. Apr. 23, 2024) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)). Her motion for temporary restraining order is denied without prejudice to her raising the due process argument in a subsequent motion.

**I.      Background**[4]

According to the verified petition, the facts of which are not contested by the government, *see* Doc. 8, petitioner is a 26-year-old citizen of Peru who entered the United States on December 16, 2022. Doc. 1 at ¶ 31. Upon entry, she was detained by immigration officials. *Id.* ¶ 32. The agents provided her with a notice to appear for removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* ¶ 33. The agents then paroled petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) and its implementing regulations. *Id.* ¶ 32; Doc. 11 at 2–3. Following her release, petitioner lived in Bakersfield, California with her family. Doc. 1 at ¶ 42.

Two-and-a-half years later, on July 2, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner when she appeared for a scheduled check-in. *Id.* ¶ 35. She was not provided with notice or an opportunity to be heard prior to her re-detention. *Id.* ¶ 44. Petitioner was initially detained at Mesa Verde ICE Processing Facility in Bakersfield, California. Doc. 1 at ¶ 36.

Petitioner requested a bond hearing before an immigration judge pursuant to 8 C.F.R. § 1236.1(d)(1), requesting her release on bond pursuant to 8 U.S.C. § 1226(a). *See id.* ¶¶ 37–38. However, the immigration judge concluded that she did not have jurisdiction to consider petitioner's request because petitioner was subject to 8 U.S.C. § 1225(b)(2)(A), which mandates detention. *See id.*; Doc. 1, Ex. A at 24–25. In her supplemental filing on October 3, 2025, petitioner indicates she was transferred to California City Detention Center on September 27, 2025.[5] Doc. 11 at 2.

---

[4] Petitioner's verified petition establishes many of the facts articulated in this section. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[5] Petitioner requests in her supplemental filing that the Court enjoin further transfers and add the warden of the California City Detention Center as a respondent. Doc. 11 at 2. Courts regularly substitute the respondent in habeas cases, particularly when there is no objection to the substitution. *See Perez v. Nevada*, No. 214CV02087APGBNW, 2019 WL 4757789, at *6 (D. Nev. Sept. 30, 2019). The Court will do so here. However, the Court denies without prejudice petitioner's request to enjoin further transfers. "Requests for affirmative relief must be made in a motion." *See Cheairs v. City of Seattle*, No. 2:21-CV-01343-LK, 2024 WL 1765663, at *8 (W.D. Wash. Apr. 24, 2024) (citing Fed. R. Civ. P. 7(b)), *aff'd*, 145 F.4th 1233 (9th Cir. 2025).

## II.     Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)); *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). The Court "need not consider the remaining *Winter* factors [if a] plaintiff fail[s] to show a likelihood of success on the merits." *Babaria v. Blinken*, 87 F.4th 963, 980 (9th Cir. 2023).

## III.     Discussion

Petitioner is unlikely to succeed on the merits of her claim that she is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).

### a.  Statutory Framework

The Court begins with a review of the statutory framework. The immigration laws set out the process by which the government decides "who may enter the country and [] who may stay here after entering." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine[,]" pursuant to the procedures articulated in 8 U.S.C. § 1225, "whether an alien seeking to enter the country is admissible." *Id.* at 287.

"Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens" apprehended at the border and ports of entry, although for different kinds of proceedings. *Id.* "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," as well as "to certain other aliens designated by the Attorney General in his discretion." *Id.* (citing 8 U.S.C. § 1225(b)(1)). An "[a]lien covered by § 1225(b)(1) [is] normally ordered removed . . . pursuant to an expedited removal

4

process[,]" unless the "alien 'indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)–(ii)).

"Alternatively," pursuant to 8 U.S.C. § 1225(b)(2), the government may "forgo the expedited removal process and refer an applicant for admission to removal proceedings under . . . 8 U.S.C. § 1229a." *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *5 (W.D.N.Y. July 16, 2025) (citing 8 U.S.C. § 1225(b)(2)); *see Jennings*, 583 U.S. at 287 (explaining that § 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)"). In proceedings under 8 U.S.C. § 1229a, "an alien [has] the privilege of being represented . . . by counsel[,] . . . a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4).

Those detained under § 1225(b)(1) or § 1225(b)(2) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R § 212.5(b)). "That express exception to [§ 1225(b)] detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300.

**b. Analysis**

After being initially detained by immigration officials upon entry into the country, petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) and its implementing regulations. Doc. 1 at ¶ 32; Doc. 11 at 2–3. The regulation at 8 C.F.R. § 212.5 implements certain requirements of 8 U.S.C. §§ 1225(b) and 1182(d)(5)(A).[6] *See* 8 C.F.R. § 212.5; *Y-Z-L-H v. Bostock*, No. 3:25-cv-965-SI, 2025 WL 1898025, at *12 (D. Or. July 9, 2025); *Coal. for Humane Immigrant Rights v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *7 (D.D.C. Aug. 1, 2025); *United States v. Amintobia*, 57 F.4th 687, 694 (9th Cir. 2023).

---

[6] Because petitioner was granted humanitarian parole pursuant to § 1182(d)(5)(A) and was placed into § 1229a removal proceedings, the statutory basis for her initial detention was § 1225(b)(2), not § 1225(b)(1). *Compare* 8 U.S.C. § 1225(b)(2)(A) (explaining that an "alien [subject to this provision] shall be detained for a proceeding under section 1229a") *with* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (explaining that that provision applies only if, among other things, the "alien . . . has not been . . . paroled").

The government "can terminate parole 'upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of [certain specified DHS] officials . . ., neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States.'"[7] *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *5 (W.D.N.Y. July 16, 2025) (citing 8 C.F.R. § 212.5(e)(2)(i)). The government "must provide 'written notice to the [noncitizen],'" *id.* at 5, and the failure to do so may violate due process, *id.* at 10–17; *Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), 2025 WL 2630826, at *11–16 (S.D.N.Y. Sept. 12, 2025); *U.S. ex rel. Paktorovics v. Murff*, 260 F.2d 610, 614 (2d Cir. 1958) ("We also hold that, in order to bring . . . 8 U.S.C. § 1182(d)(5), 'into harmony with the Constitution,' a hearing is required prior to the revocation of parole . . . ."); *see also Y-Z-L-H*, 2025 WL 1898025, at *12. If immigration officials terminate parole, "'the alien shall forthwith *return or be returned to the custody from which [she] was paroled* and thereafter [her] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). In such event, "she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

Petitioner was detained under § 1225(b)(2) upon entry, was placed into removal proceedings pursuant to 8 U.S.C. § 1229(a), and was paroled under § 1182(d)(5)(A), Doc. 1 at ¶ 32, and her re-detention in July 2025 constituted a termination of her parole pursuant to § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e). This termination of her parole means that, under the statute, she was "returned to the custody from which [she] was paroled"—§ 1225(b)(2) custody. *Jennings*, 583 U.S. at 288. Accordingly, petitioner is not likely to succeed on the merits of her

---

[7] Other courts have explained when it is in the "public benefit" to parole a noncitizen into the country: "In 2009, DHS issued the 'Parole Directive,' which further fleshes out when, precisely, it is in the 'public benefit' for an asylum-seeker to be paroled. *See* ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009). According to the Directive, if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention 'is *not* in the public interest,' and thus ICE '*should*, absent additional factors . . . parole the alien.'" *Mons v. McAleenan*, No. 19-1593 (JEB), 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019).

claim that § 1226(a) is the applicable detention provision.[8]

## IV. Conclusion and Order

Based upon the foregoing, petitioner's motion for temporary restraining order, Doc. 4, is denied.

The Clerk of Court is directed to terminate respondent Ron Murray from the docket and add Christopher Chestnut, Warden of California City Detention Center, as a respondent.

IT IS SO ORDERED.

Dated:   October 24, 2025

UNITED STATES DISTRICT JUDGE

---

[8] As noted, petitioner's motion did not raise a due process argument. Petitioner argued in her motion only that she was detained under § 1226(a). *See* Doc. 4 at 10–17. This Order addresses that argument and finds that petitioner was detained under § 1225(b)(2) and is not likely to prevail on her claim that she was detained under § 1226(a).

7