UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANELA GHILARY HUAMAN VILLANUEVA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, Warden of the California City Detention Center, POLLY KAISER, Field Office Director of the San Francisco Immigration and Customs Enforcement Office, TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01218-KES-HBK (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 22 |

This habeas action concerns the detention of petitioner Yanela Ghilary Huaman Villanueva, a noncitizen who was detained and released in 2022 but then re-detained in July 2025. This matter is before the Court on petitioner's second motion for temporary restraining order. Doc. 22. For the reasons explained below, petitioner's second motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

1

**I.     Background**[1]

Petitioner is a 26-year-old citizen of Peru who entered the United States without inspection on December 16, 2022.  Doc. 1 at ¶ 31.  After entry, she was detained by immigration officials.  *Id.* ¶ 32; Doc. 15-1, Ex. 1.  On February 17, 2023, immigration officials paroled petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) and its implementing regulations.  *Id.* ¶ 32; Doc. 11 at 2–3; Doc. 28-4, Attachment D.  By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding."  8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)).  Such "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Immigration officials released petitioner in February 2023 with instructions to report to an ICE office, which she did.  Doc. 1 at ¶ 33; Doc. 15-1, Ex. 3.  ICE agents placed petitioner in the Intensive Supervision Appearance Program ("ISAP"), which required her to check-in with ICE weekly.  *Id.*; Doc. 15-1, Juarez Decl. at ¶ 6.  Petitioner then resettled in Bakersfield, California with her family, where she lived for the next two-and-a-half years.  Doc. 1 at ¶ 42.  On March 16, 2023, immigration officials charged petitioner as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and provided petitioner with a notice to appear for removal proceedings.  Doc. 15-1, Ex. 2.  Petitioner's removal proceedings are ongoing.  Doc. 1 at ¶ 43.

On July 2, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner when she appeared for a scheduled check-in.  *Id.* ¶ 35.  She was not provided with notice or an opportunity to be heard prior to her re-detention.  *Id.* ¶ 44.  Petitioner maintained a clean criminal record.  *See* Doc. 15-1, Ex. 3.  Respondents allege that petitioner violated the terms of her release by missing virtual check-ins on June 21, 2024, and March 28, 2025.  Doc. 15-1,

---

[1] Petitioner's verified petition establishes many of the facts articulated in this section.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

1   Juarez Decl. at ¶ 8.  Petitioner was initially detained at Mesa Verde ICE Processing Facility, but
2   on September 27, 2025, was transferred to California City Detention Center.  Doc. 11 at 2.
3         On September 16, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and
4   motion for temporary restraining order, Doc. 4.  The Court denied petitioner's first motion for
5   temporary restraining order, which raised a statutory claim; petitioner did not assert her due
6   process claim in her initial motion for temporary restraining order.  Doc. 13.  Petitioner filed the
7   present motion for temporary restraining order on December 22, 2025, asserting her due process
8   claim.  Doc. 22.  Respondents filed an opposition on December 28, 2025.  Doc. 24.

9   **II.     Conversion of the Motion**

10        In their opposition to petitioner's second motion for temporary restraining order,
11  respondents state that they are amenable to converting the motion to one for a preliminary
12  injunction and that they waive oral argument.  Doc. 24 at 1.  Given that the standard for issuing a
13  temporary restraining order and preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co.*
14  *v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and that respondents had notice
15  and opportunity to respond in opposition, petitioner's motion is converted to a motion for
16  preliminary injunction.

17  **III.    Legal Standard**

18        "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*
19  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–
20  90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to
21  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary
22  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."
23  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.
24  531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of
25  success on the merits is a threshold inquiry and is the most important factor."  *Simon v. City &*
26  *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*
27  *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious
28  questions going to the merits—a lesser showing than likelihood of success on the merits—then a

1  preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's
2  favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767
3  F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.  Discussion**

    **a.  Likelihood of Success on the Merits**

Petitioner argues that the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger. Doc. 22 at 9–12.[2] Respondents' only argument in response is that § 1225(b) applies to petitioner and mandates that she be detained. *See* Doc. 24. But petitioner now asserts an as-applied constitutional challenge to her mandatory detention under § 1225(b), not a statutory challenge. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

    **1.  Liberty Interest**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by

---

[2] Petitioner also raises an APA claim, but the Court need not address that claim for purposes of this motion, as petitioner is entitled to the preliminary relief she seeks based on her due process argument.

4

*Morrissey.*" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84.

Petitioner's humanitarian parole similarly allowed her to live in her community while she sought relief in her removal proceedings. The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's

5

>           interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly two-and-a-half years, and during that time, began a life in the United States with her family. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. While respondents allege that petitioner violated the terms of her release on two occasions, courts have found in similar cases that it does not "necessarily follow that Petitioner can be detained for those violations without a hearing." *E.A. T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Id.* Similarly, here, as there were no procedural safeguards to determine if petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that

"the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in revoking parole without some informal procedural guarantees."). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025); *Duong v. Kaiser*, No. 25-CV-07598-JST, 2025 WL 2689266, at *8 (N.D. Cal. Sept. 19, 2025).[3] And that hearing should have occurred before petitioner was re-detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

In this case, petitioner allegedly violated the terms of her release on two occasions. Doc. 15-1, Juarez Decl. at ¶ 8. But respondents state that the date of petitioner's last alleged

---

[3] *See also Addington v. Texas*, 441 U.S. 418, 425–33 (1979) (holding that clear and convincing evidence standard was appropriate standard of proof for civil commitment proceedings for the mentally ill).

7

1  violation was March 18, 2025. *Id.* And after the alleged violations, petitioner reported to the ICE
2  office on July 2, 2025, when agents instructed her to do so. Doc. 1 at ¶ 35. The fact that
3  petitioner appeared as instructed undermines the argument that exigent circumstances warranted
4  her immediate arrest as a flight risk, without any pre-deprivation process.
5  　　　Petitioner has therefore established that she is likely to succeed on the merits of her claim
6  that her re-detention without a pre-deprivation bond hearing violated the Due Process Clause.

　　　　　　　**b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

8  　　　Turning to the second *Winters* factor, "[i]t is well established that the deprivation of
9  constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994
10  (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged
11  deprivation of a constitutional right is involved, most courts hold that no further showing of
12  irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)
13  (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given
14  the Court's conclusion that petitioner is likely to succeed on the merits of her claim that her re-
15  detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable
16  harm absent injunctive relief.

　　　　　　　**c. Balance of Equities and Public Interest**

18  　　　When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird*
19  *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice
20  "between [minimally costly procedures] and preventable human suffering," as discussed above,
21  the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."
22  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).
23  　　　The public interest also weighs in petitioner's favor. "The public has a strong interest in
24  upholding procedural protections against unlawful detention, and the Ninth Circuit has
25  recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL
26  1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)
27  (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,
28  838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's

constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Remedy

The Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return her to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Y-Z-L-H*, 2025 WL 1898025, at *14 (ordering immediate release due to violation of 8 C.F.R. § 212.5(e)(2)(i)); *Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

### V.     Conclusion and Order

Petitioner's motion for a preliminary injunction, Doc. 22, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are also ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

This matter is referred to the assigned magistrate judge for further proceedings including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:   January 3, 2026

UNITED STATES DISTRICT JUDGE

9